UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON CARLIN,

       Plaintiff,                                CIVIL ACTION NO. 12-10222

   v.                                        DISTRICT JUDGE ARTHUR J. TARNOW

COMMISSIONER OF                MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION
TO REMAND AND DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NOS. 12 and 13)**

## I.   PROCEDURAL HISTORY

### *A.*   *Proceedings in this Court*

On January 18, 2012, Plaintiff filed suit seeking judicial review of the Commissioner's decision to deny him social security benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), the matter was referred to this Magistrate Judge for a report and recommendation (Dkt. No. 3). Before the Court is Plaintiff's Motion to Remand (Dkt. No. 12) and Defendant's Motion for Summary Judgment (Dkt. No. 13). Plaintiff also filed a Reply (Dkt. No. 14).

### *B.*   *Administrative Proceedings*

Plaintiff applied for disability and disability insurance benefits as well as supplemental security income ("SSI") on December 16, 2009, alleging a disability onset date of July 22, 2009 (Tr. 12). Plaintiff's claims were initially denied by the Commissioner on April 6, 2010 (Tr. 12). On April 6, 2011, Plaintiff appeared with counsel for a hearing before Administrative Law Judge ("ALJ") JoErin O'Leary, who considered the case *de novo*. In a decision dated April 19, 2011, the ALJ found that Plaintiff was not disabled (Tr. 12-23). Plaintiff requested a review of this

1

decision (Tr. 1). On December 13, 2011, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for further review (Tr. 1-3).

In light of the entire record, this Magistrate Judge finds that substantial evidence supports the Commissioner's determination that Plaintiff was not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's motion for remand be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the findings of the Commissioner be **AFFIRMED.**

## II.   STATEMENT OF FACTS

### A.   *ALJ Findings*

In analyzing Plaintiff's claim, the ALJ applied the five-step disability analysis and found at step one that Plaintiff had not engaged in substantial gainful activity (Tr. 14).

At step two, the ALJ found Plaintiff had the following "severe" impairments: residual impairments from lightening strike, including: cognitive disorder, mood disorder, right shoulder injury, and exacerbation of degenerative disc disease (Tr. 14).

At step three, the ALJ found no evidence that Plaintiff had an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations (Tr. 14).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> light work . . . except [Plaintiff] can stand and/or walk two hours in an eight-hour workday. [Plaintiff] would not be able to operate foot controls on the right and not reach overhead on the right above shoulder level. [Plaintiff] could not climb ladders, ropes, [or] scaffolds, [and he cannot] kneel, or crawl, [nor be] exposed to workplace hazards such as unprotected heights or dangerous moving machinery or work outdoors. [Plaintiff] could do simple routine tasks not performed around the public and in a relatively low stress job defined as not requiring more than occasional decision-making or workplace changes, and not performed on an assembly line.

(Tr. 16-17).

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a heavy equipment operator (Tr. 21).

At step five, the ALJ denied Plaintiff benefits, finding Plaintiff could perform a significant number sedentary unskilled jobs, such as buckle-wire inserter (1,396 available jobs); puller (204 available jobs); and sticker (1,396 available jobs) (Tr. 22).

### B. *Administrative Record*

#### 1. **Plaintiff's Testimony and Statements**

Plaintiff testified at the administrative hearing that he was struck by lightning in July of 2009 (Tr. 32). As a result, Plaintiff becomes emotional when he goes outside, and he is uncomfortable around strangers (Tr. 33, 51). In addition, Plaintiff has fatigue; back pain; pain in his right calf, foot, and ankle; limited range of motion in his shoulder; memory problems; mood swings; trouble concentrating; problems thinking; and trouble with eye-hand coordination (Tr. 33-34, 39, 41-42, 48-49). Plaintiff also has trouble walking up and down stairs and had fallen 15-20 times (Tr. 38-39).

Plaintiff's typical day consists of watching television (Tr. 41). He can walk a block-and-a-half before his calf muscle gets tight and his back hurts (Tr. 49). Sometimes Plaintiff will not leave the house for a few days (Tr. 51).

#### 2. **Vocational Expert's Testimony**

During the administrative hearing, the ALJ asked a vocational expert ("VE") to assume a hypothetical individual who is Plaintiff's age, has Plaintiff's level of education, and past work experience who is limited to light exertional work with only two hours of standing and walking. The individual cannot operate foot controls on the right; reach overhead on the right above shoulder level; cannot climb ladders, ropes or scaffolds; and cannot kneel or crawl. In addition, the individual cannot be exposed to unprotected heights or dangerous moving machinery; cannot perform any outdoor work; is limited to simple, routine tasks not performed around the general public; can only have occasional decision-making and occasional work place changes; and the

individual cannot perform at a production rate pace[1] (Tr. 53-54). The VE testified that such an individual would be precluded from work (Tr. 54). The individual would also be precluded from work if he could not perform simple tasks consistently, or was unpredictably absent more than four times a month (Tr. 56-57).

When the ALJ changed the hypothetical from "no production rate" to "no assembly line type work," the VE testified that such an individual could perform work as a buckle-wire inserter (1,396 jobs available in the region), puller (204 jobs available in the region), and sticker (1,396 jobs available in the region) (Tr. 54-56).

      *C.*     *Plaintiff's Claims of Error*

Plaintiff makes two arguments on appeal[2]: (1) the ALJ's RFC did not adequately accommodate Plaintiff's moderate deficits in concentration, persistence or pace; and (2) the ALJ failed to give deference to the opinions of Plaintiff's treating physician (Dr. Robert K. Hafford).

**III.    DISCUSSION**

      *A.*     *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a government agency makes the initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is

---

[1] The VE defined "production rate pace" as requiring the individual to stay on task for 80-85% of an eight-hour work day (Tr. 54).

[2] In passing, Plaintiff argues that his treating physician, Dr. Robert K. Hafford, placed restrictions on him that are not reflected in the RFC, and that are supported by Dr. Gavin I. Awerbuch and Plaintiff's testimony (Dkt. No. 12 at p.18). Plaintiff does not specify what restrictions the ALJ did not include in the RFC. Accordingly, this Magistrate Judge finds Plaintiff's argument is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones").

not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility") (internal quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a

different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

    **B.**    ***Governing Law***

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 CFR § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 CFR §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden shifts to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 CFR §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

#### 1. **Substantial Evidence Supports the ALJ's RFC Determination**

Plaintiff argues that the ALJ's hypothetical was inaccurate because it failed to explicitly recognize that Plaintiff was "moderately" limited in concentration, persistence and pace. The ALJ posed the following hypothetical to the VE:

> Q. If we were to consider a hypothetical individual of [Plaintiff's] age, education and work experience who was limited to light exertional work, but instead of six hours of standing [and] walking as is typically required by light [work], this individual would be limited to only two hours of standing and walking. The individual would not be able to operate foot controls on the right. They would not be able to reach overhead on the right above shoulder level. They could not climb ladders, ropes or scaffolds. They could not perform any kneeling or crawling. They could not be exposed to work place hazards such as unprotected heights or dangerous moving machinery. They could not perform any outdoor work. They would be limited to simple, routine tasks not performed around the general public. They'd be limited to relatively low-stress jobs, which for this hypothetical will be defined as work requiring no more than occasional decision-making and no more than occasional work place changes. And finally, they would not be able to perform at a production rate pace.

(Tr. 53-54). "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other

8

work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). Plaintiff's argument – that hypothetical limitations such as "simple" and "unskilled" fail to account for moderate mental deficiencies – is not uncommon, and the case law in this District resolves it both ways. Indeed, there is relevant authority ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical individual to unskilled work or simple, routine tasks.[3] However, there is also authority that has found an ALJ formed an accurate hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.[4] In analyzing the case law, this Magistrate Judge agrees that a hypothetical simply limiting a claimant to unskilled work

---

[3] *See e.g., Benton v. Comm'r of Soc. Sec.*, 511 F.Supp.2d 842, 849 (E.D. Mich. 2007) ("Here, the ALJ found that although Plaintiff has a moderate deficiency in her ability to maintain concentration, persistence, and pace, she is able to perform simple, routine, repetitive work. However, the limitations included in the hypothetical question and the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned was insufficient to suitably accommodate Plaintiff's concentration limitations"); *Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557 at *10 (E.D. Mich. July 28, 2009) ("In the present case, while finding that Plaintiff is 'moderately limited with concentration, persistence, and pace,' [the ALJ's] only limitations were with co-workers and the public, and to "unskilled, light jobs." These parameters are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE. Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at an unskilled job" (internal citations omitted)); *Long v. Comm'r of Soc. Sec.*, No. 09–14227, 2010 WL 6413317, at *7 (E.D. Mich. Dec. 6, 2010) ("In the present case, the ALJ gave Plaintiff the mental limitation for 'simple unskilled work.' However, the ALJ also determined that 'with regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.' The ALJ did not incorporate [that] limitation ... into the controlling hypothetical. This was error." (internal citations omitted)); *Perkins v. Comm'r of Soc. Sec.*, No. 10–10089, 2010 WL 5634379, at *9 (E.D. Mich. Dec. 14, 2010) (same).

[4] *See e.g., Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325 at *7–8 (E.D. Mich. June 16, 2008) ("Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of 'moderate' limitations . . . are not incompatible "); *Latare v. Comm'r of Soc. Sec.*, No. 08–13022, 2009 WL 1044836 at *3 (E.D. Mich. April 20, 2009) ("The Law Judge's hypothetical questions to the Vocational Expert accurately described Plaintiff's moderate limitations caused by her depressive disorder. There is no merit to Plaintiff's argument that the ALJ should have included a limitation that she had moderate limitations in maintaining concentration, persistence or pace. Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment"); *Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375 at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace").

may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence or pace because the difficulty of a task does not always equate with the difficulty of staying on task. *See e.g., Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557 at *10 (E.D. Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work. Thus, 'moderate' concentration problems . . . need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence. Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient"); *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job").

However, there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled, routine work" but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC. *See Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325 at *7 (E.D. Mich. June 16, 2008); *see also Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375 at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace"). In a similar case, this evaluative process was explained as follows:

> Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of "moderate" limitations findings are not incompatible.

*Hess*, 2008 WL 2478325 at *7; *see also Lewicki*, 2010 WL 3905375 at *3.

In *Hess*, the state agency doctor found that the claimant suffered moderate limitations in concentration, persistence and pace, such that the claimant had limitations in performing at a consistent pace. *See Hess*, 2008 WL 2478325 at *7. However, the doctor ultimately concluded that the claimant retained the ability to perform unskilled tasks on a sustained basis. *Id.* at *4. *Hess* concluded that because the ALJ relied on the state doctor's finding of a moderate impairment with concentration, persistence or pace, it was reasonable for the ALJ to also rely on that doctor's ultimate conclusion that the claimant could perform unskilled work on a sustained basis, and, accordingly, to omit a concentration-based limitation from the hypothetical. *Id.* at *8.

In this case, the ALJ's RFC limitation of simple, routine work accurately reflects state-reviewing psychologist Dr. Judy Strait's opinion that Plaintiff was "moderately" limited with respect to concentration, persistence and pace. On the same forms in which she indicated that Plaintiff had moderate limitations with regard to concentration, persistence and pace, Dr. Strait also concluded that Plaintiff "retains the capacity to perform simple, routine tasks on a sustained basis" (Tr. 76). In addition, psychologist Nathalie Menendes concluded that Plaintiff "is able to understand, retain, and follow simple and one step instructions. He is able to perform and remember simple, routine, and repetitive tangible tasks" (Tr. 403). These conclusions are not significantly different from the hypothetical question presented by the ALJ, which limited Plaintiff to "simple, routine tasks" (Tr. 54). As in *Hess* and *Lewicki*, this Magistrate Judge believes that the ALJ's finding of a moderate limitation in concentration, persistence or pace has to be considered in conjunction with Dr. Strait and Dr. Menendes' broader conclusions, which suggests that Plaintiff could successfully perform simple occupational tasks. As such, the hypothetical question used by the ALJ is supported by substantial evidence in the record and should not be disturbed on appeal[5].

---

[5]Plaintiff also argues that if the RFC is defective, then the ALJ's credibility analysis is defective, because "the ALJ found [Plaintiff's] statements concerning the intensity, persistence and limiting effects of his symptoms not credible to the extent they were inconsistent with [Plaintiff's] RFC" (Dkt. No. 12 at p.16). Because this Magistrate Judge finds substantial evidence supports the ALJ's RFC, Plaintiff's credibility argument also lacks merit.

11

2. **The ALJ Did Not Err By Failing to Give Plaintiff's Treating Physician's Opinions Controlling Weight**

   a. *Dr. Robert K. Hafford's Opinion Regarding Plaintiff's Ability to Work*

In an undated letter to Plaintiff, Dr. Hafford stated:

[Plaintiff] has been my patient since 8-3-1999.  He has been serious about his health and listened to my advice since his frist[sic] visit.  He was in his usual good state of health when while at work, he and three co-workers[] [w]ere struck by lightning.  This occurred at 9am [on] 07/22/2009.  He was seen in my office [on] 07/24/2009.  His original complaints included bilateral leg weakness, stiffness and pain as well as bilateral knee and ankle pain with patchy bilateral hair lose[sic] of his legs and ankle skin wounds.  [Plaintiff] has undergone neurological evaluation and physical therapy since July of 2009.  As of 08/06/2009[,] he has suffered with unrelenting leg and arm as well as back stiffness and, incoordination[sic].  He also has leg numbness with arm and foot cramps.  As of 08/27/2009[,] he started with shortterm[sic] memory loss and difficulty walking due to leg stiffness.  He finds it hard to move his hands due to stiffness and numbness, headaches have also appeared. [Plaintiff] most recently has pain in his right thigh, right buttock, and low back.  All this time he has attended physical therapy and followed their exercise program.  Lately[,] he has suffered from feeling lightheaded, dizziness [and] seeing spots and floaters, and [he has] night sweats. [Plaintiff] has also had episodes of abnormal thoughts and actions.  He was seen putting diesel fuel into his gas tank.  He now also suffers from right shoulder pain, bilateral leg pain[] and heel pain[] making it difficult to walk in his usual way.  Lately[,] he fell onto his knees, which is expected from his abnormal gait.  *These ongoing complaints make it difficult for me to imagine him functioning normally at a job of any kind*.  His trouble walking, trouble coordinating his hand function, and his memory loss and confusion must be considered.

(Tr. 237) (emphasis added).

   b. *Dr. Robert K. Hafford's Opinion Regarding Plaintiff's Physical Limitations*

On April 13, 2010, Dr. Hafford completed a Medical Examination Report in which he stated Plaintiff cannot lift anything, and he can stand or walk less than two hours in an eight-hour workday (Tr. 405).  However, Dr. Hafford indicated Plaintiff can meet his needs at home (although he needs help with laundry and yard work) (Tr. 406).  Dr. Hafford had the opportunity to include the medical findings that support his physical limitations, but he left that section blank (Tr. 406).

### c. *Analysis*

Plaintiff argues that the ALJ erred by not giving controlling weight to his treating physician's opinions (Dr. Hafford).

Under the treating source rule, "[a]n ALJ must give the opinion of a treating source controlling weight if [she] finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 CFR § 404.1527(d)(2)); *see also* SSR 96–2p. Furthermore, even where the ALJ finds that a treating physician's opinion is not entitled to controlling weight, he or she must apply the following non-exhaustive list of factors to determine how much weight to give the opinion: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization of the treating source." *Id.*; 20 CFR § 404.1527.

The treating-source rule also "contains a clear procedural requirement." *Wilson*, 378 F.3d at 544 (citing 20 CFR § 404.1527(d)). In particular, "the [ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188 at *5; *Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243; *see also Wilson*, 378 F.3d at 544 ("[t]he regulation requires the agency to "give good reasons" for not giving weight to a treating physician in the context of a disability determination") (citation omitted).

The ALJ stated the following regarding Dr. Hafford's opinion:

> [Plaintiff's] primary care doctor, Robert K. Hafford, M.D. initially concluded that [Plaintiff] would be able to return to work, but ultimately, Dr. Hafford opined that [Plaintiff's] symptoms "make it difficult for me to imagine him functioning normally at a job of any kind." In April 2010, Dr. Hafford opined [that Plaintiff] was unable to lift any weight; and could only stand, walk, or sit for two hours in an eight-hour workday. At the same time, Dr. Hafford indicated [Plaintiff] was able to meet his needs at home. This inconsistency makes the doctor's opinion . . . less persuasive. Likewise, the course of treatment pursued by the doctor was not consistent with what one would expect for this level of restriction. Although the doctor has a long term treating relationship with [Plaintiff], I gave this opinion little weight because this opinion was not consistent with the medical evidence of record as a whole. For example, an independent consultant in November 2009 found [Plaintiff's] reflexes were quite brisk/symmetric, [he had a] full pain-free range of motion, and full straight leg raise. [Plaintiff] was also able to walk, squat and step up and off a nine-inch-high step. His spinal flexion and extension were done with little or no pain and [Plaintiff] had no difficulty getting up from a seated position and on/off the examining table. These findings, and similar findings by both a pain management specialist and neurologist, are inconsistent with the disabling symptoms alleged by [Plaintiff] and supported by Dr. Hafford. Furthermore, Dr. Hafford's opinion [that Plaintiff] could not function "normally at a job of any kind" is within the special purview of the Commissioner. Treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Given that this opinion is neither well-supported by other substantial evidence of record and is not well-supported by the objective medical evidence of record, I find that it not entitled to controlling weight. I have carefully considered the opinion but ultimately gave it little weight for the reasons discussed.

(Tr. 19-20). This Magistrate Judge finds the ALJ provided "good reasons" for not affording Dr. Hafford's opinion controlling weight, in compliance with 20 CFR § 404.1527(d)(2). First, Dr. Hafford's letter opined on an issue reserved to the Commissioner. *See* 20 CFR § 404.1527(d)(3) ("[w]e will not give any special significance to the source of opinion on issues reserved to the Commissioner").

Second, Dr. Hafford's opinion that Plaintiff's symptoms "make it difficult . . . to image him functioning normally at a job of any kind" (Tr. 237) appears to have been improperly based, at least in part, on Plaintiff's subjective complaints alone. *See Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 156 (6th Cir. 2009) ("substantial evidence supports the ALJ's determination that the opinion of [the Plaintiff's] treating physician[] was not entitled to deference because it was based on [Plaintiff's] subjective complaints, rather than objective medical data").

14

Third, neither of Dr. Hafford's opinions were supported by medical evidence. *See Wilson*, 378 F.3d at 544 (a treating physician's opinion is entitled to controlling weight, if the ALJ finds it is supported by "medically acceptable clinical and laboratory diagnostic techniques").

Fourth, the ALJ provided Plaintiff examples of how Dr. Hafford's opinion regarding Plaintiff's physical limitations was inconsistent with the medical evidence, and inconsistent with Dr. Hafford's own findings.

Finally, the ALJ did not adopt Dr. Neil A. Friedman's opinion – the defense examiner in Plaintiff's workers' compensation case – over Plaintiff's treating physician's opinion, as Plaintiff claims. Indeed, the ALJ disagreed with Dr. Friedman's overall conclusion that Plaintiff had absolutely no limitations associated with being struck by lightning; he only gave Dr. Friedman's opinion "some weight," because he agreed with his conclusion that Plaintiff was not disabled (Tr. 19).

## IV. RECOMMENDATION

For the above-stated reasons, **IT IS RECOMMENDED** that Plaintiff's motion for remand be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED.**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections can constitute a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 142 106 S.Ct. 466, 468 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir.

1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon<br>
Mark A. Randon<br>
United States Magistrate Judge

Dated: January 11, 2013

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 11, 2013, by electronic and/or ordinary mail.*

*s/Melody Miles*<br>
*Case Manager to Magistrate Judge Mark A. Randon*